1
2
3
4
5
6
7
8                          UNITED STATES DISTRICT COURT
9                         SOUTHERN DISTRICT OF CALIFORNIA
10

| | |
|---|---|
| 11   LEARNING EVOLUTION, LLC, a California Limited Liability Company,<br><br>                Plaintiff,<br><br>v.<br><br>CPG CATNET INCORPORATED dba Category Management Association, a Texas and Minnesota corporation; CATEGORY MANAGEMENT KNOWLEDGE GROUP, a Canadian Company; MGMT3D, LLC, a Minnesota Limited Liability Company; BLAINE ROSS, an Individual; GORDON WADE, an Individual; JOHN DRAKE, an Individual; DANIEL STRUNK, an Individual; MICHAEL SKILLINGSTAD, an Individual; PHIL MCCRATH, an Individual; MICHAEL MCMAHON, an individual; SUE NICHOLLS, an Individual,<br><br>                Defendants. | Case No.: 20-CV-2153 TWR (WVG)<br><br>**ORDER (1) GRANTING DEFENDANTS' MOTION TO DISMISS COMPLAINT, AND (2) DISMISSING WITHOUT PREJUDICE PLAINTIFF'S COMPLAINT**<br><br>(ECF No. 18) |

/ / /
/ / /

Presently before the Court is Defendants CPG Catnet Incorporated dba Category Management Association, Category Management Knowledge Group, MGMT3D, LLC, Blaine Ross, Gordon Wade, John Drake, Daniel Strunk, Michael Skillingstad, Phil McGrath, Michael McMahon, and Sue Nicholls's Motion to Dismiss, ("MTD," ECF No. 18), as well as Plaintiff Learning Evolution, LLC's Opposition to the Motion ("Opp'n," ECF No. 26), and Defendants' Reply in Support of the Motion ("Reply," ECF No. 33). The Court held a hearing on October 13, 2021.  (ECF No. 36.)  For the reasons set forth below, the Court **GRANTS** Defendants' Motion to Dismiss.

**BACKGROUND**

## I.    Factual Background

Learning Evolution, LLC ("LE" or "Plaintiff") is an "online e-learning and training services company that specializes in sales, marketing and category management [] training programs and services." (ECF No. 1, ("Compl.") ¶ 12.)  Category management ("CM") is a discipline developed to "use data and information intelligently as a means of developing insights into consumer purchasing habits and shopper behavior."  (*Id.* ¶ 34.)  CM is used by consumer-packaged goods ("CPG"), brands, and retail companies to increase sales. (*Id.*)  Scott Matthews is currently the Managing Partner and Chief Executive Officer of LE. (*Id.* ¶ 29.)

In 2004, Donna Frazier founded CPG Catnet Incorporated dba Category Management Association ("CMA"), to "provide for a common language, a set of talent acquisition guidelines, and training standards in the CM field."  (*Id.* ¶ 35.)  Blaine Ross ("Ross") is the President of CMA.  (*Id.* ¶ 16.)  In 2008, CMA created a steering committee of executives to establish industry "certification" and training standards.  (*Id.* ¶ 36.)  In 2009, the committee developed the Professional Standards Guide ("PSG") for CM certification.  (*Id.* ¶ 37.)  LE created and sold the first series of online e-learning coursework modules based on the PSG.  (*Id.* ¶ 38–40.)  In 2010, Daniel Strunk ("Strunk"), CMA's Certification Chairman and Senior-Vice President, granted LE the status of an accredited training provider.  (*Id.* ¶ 42–44.)  LE maintained that status until 2019.  (*Id.* ¶ 59.)  In 2011,

2

LE provided Strunk and DePaul University with free access to its content in exchange for an Advisory Board seat within CMA's Sales and Marketing Group.  (*Id.* ¶ 45.)

In 2014, Defendant MGMT3D acquired CMA.  (*Id.* ¶ 61.)  Michael Skillingstad ("Skillingstad") is the managing partner of MGMT3D and a board member of CMA.  (*Id.*)  In 2016, LE paid CMA $10,000 for membership to a committee of manufacturers, retailers, and solution providers to assist in updating the PSG.  (*Id.* ¶ 50.)  The committee was led by Defendants John Drake ("Drake") and Gordon Wade ("Wade").  (*Id.*)

In November 2018, CMA and Category Management Knowledge Group ("CMKG"), a Canada-based, CM-training company, entered into an exclusive joint-venture agreement for the purchase and sale of CMKG's online training material.  (*Id.* ¶ 68.)  Plaintiff alleges that, because of the agreement, CMKG would be CMA's only accredited provider.  (*Id.*)  In addition, Plaintiff alleges that Strunk and CMA informed Plaintiff's clients that "LE's content is not accredited content."  (*Id.* ¶ 69.)  Plaintiff further alleges that Strunk "began to spread misinformation to existing and prospective LE clients regarding LE and its content."  (*Id.*)  Plaintiff contends that CMA refused to allow Plaintiff to register for an upcoming CMA Annual Conference, "an event at which LE had maintained a consistent presence through the years."  (*Id.* ¶ 64.)  CMA created the Higher Education Advisory Board ("HEB") to "help[s] universities develop a curriculum that would educate the next generation of CM professionals."  (*Id.* ¶ 51.)  Plaintiff alleges that CMA disbanded the HEB and created a new board with all the same members, except Plaintiff.  (*Id.* ¶¶ 70–71.)  Due to Defendants' actions, Plaintiff alleges a seventy (70) percent loss in revenue.  (*Id.* ¶ 99.)

## II.   Procedural History

On November 3, 2020, Plaintiff filed the present suit against Defendants alleging federal, state, and common law claims.  (*See* Compl.)  Under federal law, Plaintiff asserts causes of action pursuant to Sections 1 and 2 of the Sherman Antitrust Act, and Sections 3, 4, and 16 of the Clayton Antitrust Act.  (*Id.* ¶¶ 1–11.)  Under California law, Plaintiff asserts causes of action for violations of the California Business and Professions Code §§

16720, 16727 (Cartwright Act), and 17200 et seq. (the Unfair Competition Act or "UCL"), intentional interference with contractual relations, intentional interference with prospective economic relations, and unjust enrichment.  (*Id.*)

On January 29, 2021, Defendants filed the instant Motion to Dismiss for lack of personal jurisdiction, improper venue, and failure to state a claim.  On May 13, 2021, Plaintiff filed an Opposition, (ECF No. 26) and on May 25, 2021, Defendants filed a Reply (ECF No. 33).

**ANALYSIS**

**I.    Personal Jurisdiction**

    ***A.    Legal Standard***

"A Court's power to exercise jurisdiction over a party is limited by both statutory and constitutional considerations." *In re Packaged Seafood Prod. Antitrust Litig.*, 338 F. Supp. 3d 1118, 1135 (S.D. Cal. 2018).  Constitutionally, "[t]he Due Process Clause of the Fourteenth Amendment constrains a State's authority to bind a nonresident defendant to a judgment of its courts." *Walden v. Fiore*, 571 U.S. 277, 283 (2014) (citing *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 291 (1980)).  Statutorily, "California's long-arm statute allows the exercise of personal jurisdiction to the full extent permissible under the U.S. Constitution." *Daimler AG v. Bauman*, 571 U.S. 117, 125 (2014); *see also* Cal. Civ. Proc. Code § 410.10.

Under Federal Rule of Civil Procedure 12(b)(2), a complaint may be dismissed for lack of personal jurisdiction. Fed. R. Civ. P. 12(b)(2).  "[The] inquiry centers on whether exercising jurisdiction comports with due process." *Picot v. Weston*, 780 F.3d 1206, 1211 (9th Cir. 2015).  "In opposing a defendant's motion to dismiss for lack of personal jurisdiction, the plaintiff bears the burden of establishing that jurisdiction is proper." *Id.* (internal quotation marks and citations omitted).  "[T]he plaintiff need only make a prima facie showing of jurisdictional facts." *Glob. Commodities Trading Grp., Inc. v. Beneficio de Arroz Choloma, S.A.*, 972 F.3d 1101, 1106 (9th Cir. 2020) (citations omitted).  "The plaintiff cannot 'simply rest on the bare allegations of its complaint,' but uncontroverted

4

allegations in the complaint must be taken as true." *Picot*, 780 F.3d at 1211 (citing *Schwarzenegger v. Fred Martin Motor, Co.*, 374 F.3d 797, 800 (9th Cir. 2004)). "[F]actual disputes are construed in the plaintiff's favor." *Freestream Aircraft (Berm.) Ltd. v. Aero Law Grp.*, 905 F.3d 597, 602 (9th Cir. 2018) (citing *Rio Props., Inc. v. Rio Int'l Interlink*, 284 F.3d 1007, 1019 (9th Cir. 2002)).

### B.    Analysis

#### 1.    Corporate Defendants

Plaintiff named three corporate Defendants ("Corporate Defendants") in their Complaint—CMA, CMKG, and MGMT3D.  (*See generally* Compl.)

The Supreme Court has recognized "two types of personal jurisdiction: 'general' (sometimes called 'all-purpose') jurisdiction and 'specific' (sometimes called 'case-linked') jurisdiction." *Bristol-Myers Squibb Co. v. Super. Ct.*, 582 U.S. ___, 137 S. Ct. 1773, 1780 (2017) (citing *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011)).  Defendants assert that the Court lacks personal jurisdiction over the Corporate Defendants because the Corporate Defendants are not subject to general jurisdiction in California as they are not "at home" in California and the Corporate Defendants are not subject to specific jurisdiction because they did not engage in any activity aimed at California.  (*See* MTD at 5–10.)  The Defendants are correct.

##### a.    CMA

###### i.    General Jurisdiction

"A court with general jurisdiction may hear *any* claim against that defendant, even if all the incidents underlying the claim occurred in a different State." *Id.* (emphasis in original) (citing *Goodyear*, 564 U.S. at 919).  A court may exercise general personal jurisdiction over a foreign corporation when a foreign corporation's activities within the forum state are "so 'continuous and systematic' as to render [it] essentially at home in the forum State." *Daimler*, 571 U.S. at 127 (quoting *Goodyear*, 564 U.S at 919).  "The standard is met only by 'continuous corporate operations within a state [that are] thought so substantial and of such a nature as to justify suit against [the defendant] on causes of

action arising from dealings entirely distinct from those activities.'" *Mavrix Photo, Inc. v. Brand Techs., Inc.*, 647 F.3d 1218, 1224 (9th Cir. 2011) (internal citations omitted).  A corporation is "at home" in two forums: its place of incorporation and its principal place of business.  *Daimler*, 571 U.S. at 137.  "Only in an 'exceptional case' will general jurisdiction be available anywhere else." *Ranza v. Nike*, 793 F.3d 1059, 1069 (9th Cir. 2015).

CMA is incorporated in Texas with its principal place of business in Minnesota. (Compl. ¶ 13.)  Plaintiff has not alleged that CMA's activities within California are so "substantial and of such a nature as to render" CMA at home in the forum state to qualify it as an "exceptional case." *See Daimler*, 571 U.S. at 139 n.19 ("[I]n an exceptional case . . . a corporation's operations in a forum state other than its formal place of incorporation or principal place of business may be so substantial and of such a nature as to render the corporation at home in that State.").  Thus, the Court does not have general personal jurisdiction over CMA.

## ii.     Specific Jurisdiction

For specific jurisdiction, a court may hear a claim over a nonresident defendant if (1) the defendant "purposefully direct[ed]" their activities to the forum state or "purposefully avail[ed]" themselves "of the privileges of conducting activities in the forum"; (2) the plaintiff's claim "arises out of or relates to the defendant's forum-related activities"; and (3) the court's exercise of jurisdiction is reasonable. *Axiom Foods, Inc. v. Acerchem Int'l, Inc.*, 874 F.3d 1064, 1068 (9th Cir. 2017) (quoting *Dole Food Co., Inc. v. Watts*, 303 F.3d 1104, 1111 (9th Cir. 2002)).  "The plaintiff bears the burden of satisfying the first two prongs of the test." *Id.* (internal citations omitted.)  "The burden then shifts to the defendant to 'present a compelling case' that the exercise of jurisdiction would not be reasonable." *Schwarzenegger*, 374 F.3d at 802 (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985)).

"The first prong of the specific jurisdiction test refers to both purposeful direction and purposeful availment." *Mavrix*, 647 F.3d at 1228.  This prong, also referred to as the

"purposeful direction test," applies to antitrust actions. *In re Gasoline Spot Litig.*, No. 20-CV-03131-JSC, 2020 WL 7431843, at *4 (N.D. Cal. Dec. 18, 2020).[1]   To establish "purposeful direction," a plaintiff must show that the defendant: "(1) committed an intentional act, (2) expressly aimed at the forum state, [and] (3) causing harm that the defendant knows is likely to be suffered in the forum state." *Schwarzenegger*, 374 F.3d at 803 (citing *Dole Food*, 303 F.3d at 1111).

Under the first prong of the purposeful direction test, a defendant acts intentionally when he acts with "an intent to perform an actual, physical act in the real world, rather than an intent to accomplish a result or consequence of that act." *AMA Multimedia, LLC v. Wanat*, 970 F.3d 1201, 1209 (9th Cir. 2020) (quoting *Schwarzenegger*, 374 F.3d at 806). Under the second prong the Court's inquiry focuses on "defendant's intentional conduct that is aimed at, and creates the necessary contacts with, the forum state." *Id.* at 1209, n.5. "[T]he plaintiff cannot be the only link between the defendant and the forum." *Walden*, 571 U.S. at 277.  Under the third prong, "something more is required than 'imposition of an injury . . . to be suffered by the plaintiff while she is residing in the forum state.'" *In re Packaged Seafood Prod. Antitrust Litig.*, 338 F. Supp. 3d 1118, 1161 (S.D. Cal. 2018) (quoting *Walden*, 571 U.S. at 289, n.8.)  The injury should be "tethered" to the forum state in a "meaningful way." *Walden*, 571 U.S. at 290.

Defendants concede that "Plaintiff has plausibly pled an intentional act" because Plaintiff alleges that "CMA and CMKG entered into a joint venture." (MTD at 7.)  Plaintiff has thus satisfied the first prong of the purposeful direction test. However, Plaintiff has not satisfied the second.  Plaintiff alleges that CMA entered into an exclusive joint-venture agreement with CMKG to "act together for the unlawful purpose of restraining trade" in the relevant CM markets, (Compl. ¶ 172), therefore CMA "perform[ed] an actual, physical act in the real world, rather than an intent to accomplish a result or consequence of that act." *AMA Multimedia*, 970 F.3d at 1209 (internal citations omitted).  Plaintiff has not

---

[1]   "A purposeful availment analysis is most often used in suits surrounding in contract" whereas the purposeful direction test "is most often used in suits sounding in tort." *Schwarzenegger*, 374 F.3d at 802–03.

20-CV-2153 TWR (WVG)

satisfied the second prong of express aiming because CMA's conduct was not expressly aimed at the forum state for two reasons.  First, Plaintiff alleges numerous instances where CMA reached out to Plaintiff's clients and diverted their revenue; however, CMA's conduct was aimed at Plaintiff and not the forum state.  Therefore, Plaintiff is the only link between CMA and California.  Second, Defendants correctly note that Plaintiff is both alleging a national antitrust scheme and an intentional act aimed at a forum state.  (MTD at 7.)  *See In Re Packaged Seafoods Prods. Antitrust Litig.*, No. 15-MD-2670 JLS (MDD), 2020 WL 2747115, at *5 (S.D. Cal. May 26, 2020) ("[E]ffects from [a] nation-wide price fixing conspiracy . . . create no connection to any particular forum.").

Plaintiff has not carried its burden of satisfying the first two prongs of the purposeful direction test and therefore the Court **GRANTS** Defendants' Motion to Dismiss as to Defendant CMA for lack of personal jurisdiction.

### b.    CMKG

#### i.    General Jurisdiction

Defendants argue that this Court lacks general jurisdiction over CMKG because CMKG is not "essentially at home" or "comparable to a domestic enterprise" in California.  (MTD at 5.)  CMKG is a privately owned Canadian company with its principal place of business in Canada.  (Compl. ¶ 13.)  Plaintiff has not alleged that CKMG's activities within California are so "substantial and of such a nature as to render" CMKG at home in the forum state to qualify as an "exceptional case."  Thus, this Court does not have general personal jurisdiction over CMKG.

#### ii.    Specific Jurisdiction

Plaintiff contends that "all of [CMKG's] independent conduct leading up to and after the decision to enter the joint venture is sufficient on its own to confer jurisdiction."  (Opp'n at 8.)  Further, to establish jurisdiction over CMKG, Plaintiff relies on the doctrine of conspiracy.  (Opp'n at 8.)  Defendants assert that Plaintiff has impermissibly lumped CMA and CMKG together.  (Reply at 2.)

A district court may exercise jurisdiction "where substantial acts in furtherance of the conspiracy *were performed in the forum state* and the co-conspirator knew or should have known that the acts would be performed in the forum state." *Underwager v. Channel 9 Australia*, 69 F.3d 361, 364 (9th Cir. 1995) (emphasis added) (internal citations omitted). However, as Defendants note, Plaintiff's assertion omits the emphasized portion of the standard from *Underwager.* (Reply at 3; Opp'n at 8.) Plaintiff has not shown that Defendants conspired in the forum state of California. Thus, Plaintiff may not rely on the theory of conspiracy to confer jurisdiction.

Plaintiff has not established that this Court may exercise jurisdiction over Defendant CMKG, and thus the Court **GRANTS** Defendants' Motion to Dismiss as to Defendant CMKG for lack of personal jurisdiction.

### c.     MGMT3D

#### i.     General Jurisdiction

Defendants argue that this Court lacks general jurisdiction over MGMT3D because MGMT3D is not "essentially at home" or "comparable to a domestic enterprise" in California. (MTD at 5.) MGMT3D is incorporated in Minnesota with its principal place of business in Minnesota. (Compl. ¶ 13.) Plaintiff has not alleged that MGMT3D's activities within California are so "substantial and of such a nature as to render" MGMT3D at home in the forum state and to qualify as an "exceptional case." Thus, this Court does not have general personal jurisdiction over MGMT3D.

#### ii.     Specific Jurisdiction

Plaintiff makes no attempt to establish a prima facie showing of jurisdictional facts to show that this Court may exercise specific jurisdiction over MGMT3D. (*See generally* Compl.; Opp'n.) Instead, Plaintiff argues that "[s]uitable grounds exists to pierce the corporate veil of Defendant CMA and sue Defendant MGMT3D directly" under the agent/alter-ego theory. (Compl. ¶¶ 805, 807, 809, 811, 813, 815, 817, 819, 823.) In 2014, MGMT3D acquired a "controlling interest in Defendant CMA." (*Id.* ¶ 61.) Plaintiff alleges that MGMT3D's interest in CMA goes beyond "mere ownership" for four reasons.

(*Id.* ¶ 805.)  First, Plaintiff alleges that MGMT3D "actively and directly participated in the antitrust conduct of its portfolio company, Defendant CMA, an entity in which its ow[n]s a controlling stake." (*Id.* ¶ 805.)  Second, Plaintiff alleges that CMA's largescale decisions regarding its antitrust conduct "would not take place without the approval of its largest institutional shareholder," CMA.  (*Id.*)  Third, Plaintiff alleges that Skillingstad's active involvement as the managing partner of MGMT3D and as a board member of CMA "further demonstrates active involvement" between MGMT3D and CMA.  (*Id.*)  Fourth, Plaintiff alleges that "MGMT3D is the primary beneficiary of the anticompetitive conduct" of CMA.  (*Id.*)

"[T]he alter ego test may be used to extend personal jurisdiction to a foreign parent or subsidiary when, in actuality, the foreign entity is not really separate from its domestic affiliate." *Ranza*, 793 F.3d at 1073.  "To satisfy the alter ego test, a plaintiff must make out a prima facie case (1) that there is such unity of interest and ownership that the separate personalities [of the two entities] no longer exist and (2) that failure to disregard [their separate identities] would result in fraud or injustice." *Id.* (internal quotations omitted). The first prong "requires a showing that the parent controls the subsidiary to such a degree as to render the latter the mere instrumentality of the former." *Id.* (internal quotations omitted).  "Total ownership and shared management personnel are alone insufficient to establish a requisite level of control." *Id*.

Under the first prong, Plaintiff argues that the unity requirement is satisfied for three reasons.  First, MGMT3D's ownership is intertwined with Defendant Skillingstad's other companies, namely EBM software and Xerxes.  (Opp'n at 9.)  Second, Defendant Skillingstad sent emails with an address "@mgmt3d.com." (*Id.*)  Third, Defendant Skillingstad's conduct was "on the board [of CMA] and involved in day to day decisions." (*Id.*)  Defendants assert that Plaintiff has not satisfied the unity requirement because the facts alleged by Plaintiff are "nothing but a thin pastiche of insubstantial and irrelevant 'facts.'" (Reply at 4.)  "[D]irectors and officers holding positions with a parent and its subsidiary can and do 'change hats' to represent the two corporations separately, despite

their common ownership." *Bastidas v. Good Samaritan Hosp.*, No. C 13-04388 SI, 2014 WL 3362214, at *4 (N.D. Cal. July 7, 2014) (citation and internal quotation marks omitted).  Plaintiff argues that Skillingstad was "acting in the parent's interest, and not the subsidiary's, when [he] engaged in the challenged conduct." (Opp'n at 9.)  While MGMT3D and CMA share a business address ("7900 Xerxes Avenue"), (Compl. ¶¶ 13, 15), Plaintiff has not overcome the presumption that MGMT3D must have a "requisite level of control" beyond Skillingstad's position on the board of CMA and the use of the company email address. *See Kramer Motors, Inc. v. British Leyland, Ltd.*, 628 F.2d 1175, 1177 (9th Cir. 1980) (holding there was no alter ego relationship where some directors for one entity had sat on the board of the other).  At best, Plaintiff has shown that MGMT3D does in fact have an ownership interest in CMA, as a parent corporation would.

Under the second prong, Plaintiff admits that it is "unaware of Def. CMA's financial status and whether and how often it disburses profits to MGMT3D" and alleges that "a severe injustice would be worked upon [Plaintiff]" if the Court recognizes CMA and MGMT3D as two distinct entities.  (Opp'n at 9.)  However, Defendants argue that Plaintiff's allegations are "pure speculation," and that Plaintiff is unable to allege "specific facts" to show fraud or injustice.  (Reply at 4.)  The Court agrees because Plaintiff has not pled any specific facts to satisfy the second prong.

Even if Plaintiff could satisfy the alter ego theory as to Defendant MGMT3D, this Court still could not exercise jurisdiction over MGMT3D because the Court cannot exercise jurisdiction over CMA, as discussed *supra B(1)(a)*.  Thus, the Court **GRANTS** Defendants' Motion to Dismiss as to Defendant MGMT3D for lack of personal jurisdiction.

### 2. *Individual Defendants*

Plaintiff has named eight individual defendants ("Individual Defendants"): Blaine Ross, Gordon Wade, John Drake, Daniel Strunk, Michael Skillingstad, Phil McGrath, Michael McMahon, and Sue Nicholls.  (*See generally* Compl.)  None of the individual Defendants are domiciled in California.  (*See* ECF No. 18, Declarations of Ross, Wade,

Drake, Strunk, Skillingstad, McGrath, McMahon, and Nicholls.)  Thus, this Court cannot exercise general jurisdiction over the Individual Defendants.

As to specific jurisdiction, Defendants argue that the Individual Defendants employed by CMA (Ross, Wade, Drake, Strunk, Skillingstad, McGrath, and McMahon) are protected by the fiduciary shield doctrine.  (MTD at 11.)  "Under the fiduciary shield doctrine, a person's mere association with a corporation that causes injury in the forum state is not sufficient in itself to permit that forum to assert jurisdiction over the person." *Davis v. Metro Prods., Inc.*, 885 F.2d 515, 520 (9th Cir. 1989).  "Because the corporate form serves as a shield for the individuals involved for purposes of liability as well as jurisdiction, many courts search for reasons to 'pierce the corporate veil' in jurisdictional contexts parallel to those used in liability contexts." *Id.*  Defendants' "status as employees does not somehow insulate them from jurisdiction." *Calder*, 465 U.S. at 790.  Each defendant's contacts with the forum State must be assessed individually." *Id.*  The standard for specific jurisdiction is discussed *supra B(1)(a)(ii)*. Defendants assert that the Court cannot exercise specific jurisdiction over any of the Individual Defendants because Plaintiff has not met its burden of showing that the "individual defendants committed intentional acts expressly aimed at California and causing harm that they know was likely to be suffered in this state." (MTD at 10.)  For the following reasons, Defendants are correct.

a.   Blaine Ross

Blaine Ross is the President of CMA.  (ECF. No. 18-2, Decl. of Blaine Ross.)  Plaintiff alleges that Ross informed LE that it would not be allowed to attend the CMA conference "under the circumstances," which refers to CMA and CMKG's new and exclusive joint-venture agreement.  (Compl. ¶ 199, 356, 531, 664.)  However, Plaintiff has not sufficiently pled facts to show that these acts were expressly aimed at California. Further, Plaintiff "has failed to oppose [Defendants'] arguments," therefore "they are conceded and waived." *See Cristo v. U.S. Sec. & Exch. Comm'n*, No. 19CV1910-GPC(MDD), 2020 WL 2735175, at *6 (S.D. Cal. May 26, 2020).  The Court cannot

exercise personal jurisdiction over Ross.   Therefore, the Court **GRANTS** Defendants' Motion to Dismiss as to Defendant Ross.

b.     Gordon Wade

Gordon Wade does not hold any position with CMA, CMKG, or MGMT3D and has not since 2016.  (ECF No. 18-7, Decl. of Gordon Wade.)  Plaintiff alleges that Wade "is the Director of Best Practices for CMA and co-owner at Retail Performance Group" with Defendant Drake.  (Compl. ¶ 17.)  Plaintiff alleges that Wade, along with Drake, led a "20-company committee" with the goal of updating the PSG.  (Compl. ¶ 50.)

Defendants argue that the Court cannot exercise specific jurisdiction over Wade because Plaintiff did not make any allegations that Wade committed intentional acts expressly aimed at California and causing harm which he knew was likely to be suffered in California.  (MTD at 10.)  Further, Defendants argue that Wade's act of "serving as an officer, director, or other agent does not imply that that person performed any intentional act."  (*Id.* at 11.)

 Plaintiff fails to demonstrate how Wade's conduct is expressly aimed at California. As it stands before the Court, Plaintiff is the only link between the forum state and Wade. Plaintiff "cannot be the only link between [Wade] and the forum."  *Walden*, 571 U.S. at 285.  Therefore, the Court **GRANTS** Defendants' Motion to Dismiss as to Defendant Wade.

c.     John Drake

John Drake does not hold any position with CMA, CMKG, or MGMT3D and has not since 2016.  (ECF No. 18-8, Decl. of John Drake.)  Plaintiff alleges that Drake "is the Senior Vice President of the CM Best Practices Team for Defendant CMA and owner at Retail Performance Group" with Defendant Wade.  (Compl. ¶ 18.)  Plaintiff alleges that Drake, alongside Wade, led a "20-company committee" with the goal of updating the PSG. (*Id.* ¶ 50.)

Defendants assert that the Court cannot exercise specific jurisdiction over Drake because Plaintiff did not make any allegations that Drake committed intentional acts

expressly aimed at California and causing harm which he knew was likely to be suffered in California.  (MTD at 10.)  Further, Defendants argue that Drake's act of "serving as an officer, director, or other agent does not imply that that person performed any intentional act." (*Id.* at 11.)

Plaintiff has not sufficiently demonstrated how Drake's conduct is expressly aimed at California.   Therefore, the Court **GRANTS** Defendant's Motion to Dismiss as to Defendant Drake.

### d.   Daniel Strunk

Daniel Strunk is the Senior Vice President of Certification and Education at CMA. (ECF No. 18-5, Decl. of Daniel Strunk.)  Plaintiff contends that Strunk "reviewed and approved content to be accredited by CMA and used and implemented LE's materials a full year after [Plaintiff was] denied CMA membership and [its] accreditation was revoked" thus there is "no logical contradiction" that Strunk "unleashed a focused effort [] targeted [toward] California."  (Opp'n at 11.)  However, as Defendants note, "this allegation has nothing to do with the asserted forum state." (Reply at 6.)  Plaintiff does not provide specific allegations showing that Strunk's acts were expressly aimed at California. Plaintiff has not sufficiently pled that this Court may exercise personal jurisdiction over Strunk because "the defendant's suit-related conduct must create a substantial connection with the forum State." *Walden*, 571 U.S. at 284.   Therefore, the Court **GRANTS** Defendants' Motion to Dismiss as to Defendant Strunk.

### e.   Michael Skillingstad

Michael Skillingstad is a board member of CMA and a senior partner of MGMT3D. (ECF No. 18-4, Decl. of Michael Skillingstad.)  Plaintiff has not demonstrated how this Court may exercise personal jurisdiction over Skillingstad as an individual.   Instead, Plaintiff simply describes Skillingstad's role as the managing partner at MGMT3D. (*See* Opp'n at 9.)  Defendants note that "LE fails to address Defendant . . . Skillingstad . . . in its analysis," and therefore Skillingstad must be dismissed.  (Reply at 5.)  As Defendants correctly note, Plaintiff "has failed to oppose the arguments," (*id.* at 5), thus "they are

conceded and waived." *See Cristo*, 2020 WL 2735175, at *6.  Therefore, the Court **GRANTS** Defendants' Motion to Dismiss as to Defendant Skillingstad.

### f.    Phil McGrath

Phil McGrath is the Vice President of Business Development at CMA.  (ECF No. 18-9, Decl. of Phil McGrath.)  Defendants argue that this Court cannot exercise specific jurisdiction over McGrath because Plaintiff did not make any allegations that McGrath committed intentional acts expressly aimed at California and causing harm which he knew was likely to be suffered in California.  (MTD at 10.)  Further, Defendants argue that McGrath's act of "serving as an officer, director, or other agent does not imply that that person performed any intentional act." (*Id.* at 11.)  Plaintiff asserts that McGrath was "LE's primary contact for sales and marketing activities, event sponsorships, and memberships" and thus "it is simply not possible" that McGrath "failed to play a role in this [tortious conduct by CMA]." (Opp'n at 11.)  However, as Defendants note, "this does not allege any *action* by McGrath" to satisfy the express aiming requirement.  (Reply at 5.)  Plaintiff's allegation that "it is simply not possible" that McGrath's role is inseparable from that of CMA is insufficient to meet this standard.  Therefore, the Court **GRANTS** Defendants' Motion to Dismiss as to Defendant McGrath.

### g.    Michael McMahon

Michael McMahon is the President of the Association of Retail and Consumer Professionals, the parent company of CMA.  (ECF No. 18-3, Decl. of Michael McMahon.)  Defendants argue that the Court cannot exercise specific jurisdiction over McMahon because Plaintiff did not make any allegations that McMahon committed intentional acts expressly aimed at California and causing harm which he knew was likely to be suffered in California.  (MTD at 10.)  Plaintiff alleges that as the new President of CMA, McMahon was "tasked with covering more CM job roles across the CM industry." (Opp'n at 12.)  Defendants note that Plaintiff's allegations have "nothing to do with California." (Reply at 7.)  Again, Plaintiff has not met its burden of showing *how* Defendant's conduct is expressly aimed at California.  Plaintiff fails to elaborate how McMahon's position as the

new President of CMA confers jurisdiction.  Therefore, the Court **GRANTS** Defendants'
Motion to Dismiss as to Defendant McMahon.

**h.     Sue Nicholls**

Sue Nicholls is one of the founders and owners of CMKG.  (ECF. No. 18-6, Decl.
of Sue Nicholls.)  Plaintiff alleges that Strunk reached out to Nicholls to begin the alleged
antitrust scheme.  (Opp'n at 6.)  Plaintiff has not demonstrated how this Court may exercise
personal jurisdiction over Nicholls as an individual.  As Defendants note (Reply at 5),
Plaintiff "has failed to oppose the arguments," therefore "they are conceded and waived."
*See Cristo*, 2020 WL 2735175, at *6.   Therefore, the Court **GRANTS** Defendants' Motion
to Dismiss as to Defendant Nicholls.

**II.    Venue**

     ***A.     Legal Standard***

"The district court of a district in which is filed a case laying venue in the wrong
division or district shall dismiss, or if it be in the interests of justice, transfer such case to
any district or division in which it could have been brought."  28 U.S.C. § 1406(a).

> [a] civil action may be brought in—
> (1) a judicial district in which any defendant resides, if all
> defendants are residents of the State in which the district
> is located; [or]
> (2) a judicial district in which a substantial part of the
> events or omissions giving rise to the claim occurred, or
> a substantial part of property that is the subject of the
> action is situated[.]

28 U.S.C. § 1391(b).  Once a defendant challenges venue, the burden shifts to the plaintiff
to prove it is proper.  *Piedmont Label Co. v. Sun Garden Packing Co.*, 598 F.2d 491, 496
(9th Cir. 1979).  In antitrust cases, the plaintiff is given a wide choice of forum. *Pac. Car
& Foundry Co. v. Pence*, 403 F.2d 949, 953 (9th Cir. 1968).  15 U.S.C. § 22 provides:

> Any suit, action, or proceeding under the antitrust laws
> against a corporation may be brought not only in the
> judicial district whereof it is an inhabitant, but also in any
> district wherein it may be found or transacts business.

Courts have interpreted special venue provisions, like 15 U.S.C. § 22, to supplement, rather than preempt, general venue statutes." *Go-Video, Inc. v. Akai Elec. Co.*, 885 F.2d 1406, 1409 (9th Cir. 1989).  A corporation can transact business without ever entering a state; without having salesmen or agents present there. . . [i]f the corporation in a practical business sense has a business within the state it may be said to be in business there.  *Id.*

### B.    Analysis

Defendants challenge the venue as improper "given that most of the parties, witnesses, documents, evidence, and challenged activities are located or took place well outside [California]."  (MTD at 14.)  Plaintiff asserts that as to the Corporate Defendants, venue is proper under 15 U.S.C. § 22.  (Opp'n at 13.)  Additionally, Plaintiff notes that the lawsuit centers around all Defendants, not just the Corporate Defendants and they are spread out throughout the country such that any other venue would have similar convenience issues to this district.  (Opp'n at 16.)  The Court agrees with Defendants— venue is improper in the Southern District of California.  First, as evidenced by the lack of specific personal jurisdiction over any of the Defendants, a substantial part of the events giving rise to the claims did not occur in this judicial district.  Second, although 15 U.S.C. § 22 expands jurisdiction for antitrust suits, it does not encompass the Corporate Defendants in this case because in a "practical business sense," the Corporate Defendants did not transact business in this judicial district.

Thus, the Court **GRANTS** Defendants' motion to dismiss for improper venue under 12(b)(3).

### CONCLUSION

In light of the foregoing, the Court **GRANTS** Defendants' Motion to Dismiss as to all Defendants[2] (ECF No. 18) and **DISMISSES WITHOUT PREJUDICE** Plaintiff's Complaint (ECF No. 1). Plaintiff **MAY FILE** an amended complaint curing the deficiencies outlined in this Order within fourteen (14) days of the electronic docketing of

---

[2]    Because Plaintiff's Complaint fails on personal jurisdiction and venue grounds, the Court need not reach the 12(b)(6) issue.

this Order.  *Should Plaintiff elect not to file a timely amended complaint, this action will be dismissed without prejudice without further Order of the Court.*

**IT IS SO ORDERED.**

Dated:  February 16, 2022

_____

Honorable Todd W. Robinson
United States District Judge

20-CV-2153 TWR (WVG)